IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SHANE A. KITTERMAN, #B80577, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 17−cv−733−MJR |
| vs. | ) ) | |
| TRACIE NEWTON, LEO SCHMITZ, CITY OF BELLEVILLE, ILLINOIS, BETH FERRY, CLAYTON GREENE, MARK HEFFEMON, WILLIAM CLAY, CITY OF O'FALLON, ILLINOIS, OFFICER BRUEGGMAN, JOHN DOE, KATHLEEN EFFAN, and BERNADETTE SCHREMPP, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Shane Kitterman, an inmate in Shawnee Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. In his Complaint, Plaintiff claims the defendants violated his due process rights and conspired together to require him to register as a sex offender in contravention with his plea agreement so as to deprive him of his liberty when he failed to do so. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a

1

governmental entity.

    (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

        (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

        (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds that this case is subject to summary dismissal.

## The Complaint

In his Complaint (Doc. 1), Plaintiff makes the following allegations[1]:

**A. Denial of Due Process – Procedural and Substantive**

On January 10, 1996, Plaintiff entered into a fully negotiated plea agreement in St. Clair County Case No. 95-cf-750 with Steve Sallerson and Robert Haida of the St. Clair County State's Attorney's Office. (Doc. 1, p. 5). The terms of the agreement included that Plaintiff

---

[1] Plaintiff grouped his claims under certain headings, which the Court will also utilize for the purpose of organization.

2

would "abandon his right to certain constitutional protections" in exchange for a reduction in his charged offense and a duty to comply with the Child Sex Offender Registration Act, 730 ILCS 150/1 (West 1994), "with its least restrictive requirements and penalties, as opposed to the current '1996' version" of the Act "with stricter reporting requirements and elevated penalties." (Doc. 1, pp. 5-6). The agreement further included that the Plaintiff would be certified a "'Child Sex Offender' pursuant to the '1994' version of the Act" and "regardless of the duration imposed under Section 7 of the Act . . . [Plaintiff] would receive a sentence of 'Four Years Probation' . . . [and] would only be subject to register as a sex offender as directed by the probation officer for the term of probation at the end of which the duty would cease to exist." (Doc. 1, p. 6). These terms were memorialized in a court order attached to the Complaint as Exhibit 3 and a court decree outlining the "Conditions of Intensive Probation Supervision" attached as Exhibit 4. (Doc. 1, p. 7).

"In the proceedings leading up to the point of the consummation of the plea deal, the Plaintiff made it clear and the state understood that the Plaintiff would only abandon his rights if the duty to register ended with the term of probation." *Id.* The terms of the agreement were forwarded to the Department of State Police. (Doc. 1, p. 8). The offense in 95-cf-750 is the only offense for which Plaintiff has been convicted that would require him to register as a sex offender. *Id.* On March 6, 1997, Plaintiff's term of probation ended. *Id.* Plaintiff's duty to register as a sex offender thereby also ended. *Id.* Defendants Newton and Schmitz, or their predecessors, failed to remove Plaintiff from the state registry. (Doc. 1, p. 9). This was concealed until March 1998 when Plaintiff discovered that his name was still on the state's registry. *Id.* When he made this discovery, he responded to the local law enforcement agency, which reviewed Plaintiff's records and determined that he was not required to register, though he

3

was still listed on the registry.  *Id.*  Between March 1998 and March 2005, Plaintiff had no obligation to register in Illinois.  *Id.*  During this time, Plaintiff did not receive "a non-forwardable verification letter that the Department of State Police must send to each sex offender required to register, notifying him of the continuing duty to register. *See* 730 ILCS 150/4-10 (West 1996)."  (Doc. 1, p. 10).

"In a self-serving document drafted by Defendant Newton, memorializing the Plaintiff's history of registration, in response to a request by the Attorney General, Defendant Newton demonstrates that within a '10 year' period following release on probation, the Plaintiff's duty to register was not lawfully extended, the Plaintiff never received any notice of an alleged extension, and no verification letter was sent to Plaintiff."  (Doc. 1, p. 11).  On or about March of 2005, Plaintiff "was arrested and falsely imprisoned after a Deputy Sheriff discovered Defendant Newton failed to remove his name from the State registry and the LEADS (Law Enforcement Agency Data System) computer system."  *Id.*  Plaintiff contacted the Department of State Police when he was imprisoned and believed that he would be released immediately.  *Id.*

"After several months and numerous petitions for relief submitted to the Department, the State, and the Court promised not to extend the period of registration for a conviction in St. Clair County Case No. 05-cf-376, due to the policy of the State Police Defendants to deny request[s] for relief, no hearing was provided for the Plaintiff."  *Id.*  Plaintiff was under "legal duress and legal disability from the continued obligation to register and threats of and several actual arrests and imprisonments without any available remedy" even while "[t]he law and administrative rules created a liberty interest and a duty upon defendant Newton and Schmitz."  (Doc. 1, p. 12).  "At trial following arrest for an alleged violation of the duty to register, the trial court refused to hear evidence or a defense to challenge the legitimacy of the requirement to register."  *Id.*

Plaintiff experienced "arrest, loss of employment, loss of intimate relations with [his] wife and child, [and] physical and mental anguish" as a result of Defendants Newton and Schmitz refusing to provide Plaintiff with a hearing and an opportunity to be heard. (Doc. 1, p. 13). Plaintiff had a mental breakdown and required psychological medication and counseling. *Id.* He responded to the Belleville Police Department, where his first registration was conducted, and it "declared in '1998' that its records memorialized the terms of the negotiated plea and as such no further registration was required." *Id.* "To [Plaintiff's] utter shock and horror, the agency declared that Defendant Newton and the State Attorney instructed that every registration after the March arrest was to include a conviction not for the offense of violation 720 ILCS 5/12-16(c)(1), a Class 2 Felony . . . but instead for violation 720 ILCS 5/12-14(b)(1), 'a Class X Felony' of which would subject Plaintiff to lifetime registration." (Doc. 1, pp. 13-14).

Defendant Newton "instructed the agency to change the date of conviction, age of the victim, and remove information notifying the Plaintiff of when the period of registration would expire." (Doc. 1, p. 14). Between 2005 and 2012, Plaintiff attempted to "obtain relief from the obligation to register, by contacting Defendant Newton repeatedly" and "all petitions were ignored." *Id.* "The trial court refused to accept evidence regarding the plea agreement; the state disavowed the terms of the agreement; Defendant Newton altered conviction information and withheld a final decision that could be reviewed by the trial Court; [and] Defendant Newton's self-serving documents demonstrate years of willful and wanton conduct in complete disregard for the law, the Plaintiff's rights, and administrative rules." (Doc. 1, p. 15).

In 2012, Plaintiff was arrested and beaten by detectives of the Belleville Police Department for alleged failure to register as a sex offender in St. Clair County Case No. 12-cf-1204. (Doc. 1, p. 16). The Plaintiff again attempted to contact Defendant Newton to obtain

relief. *Id.* "The Court granted the Plaintiff's motions for continuance on several occasions and instructed the State's Attorney to contact Defendant Newton and determine why she was not providing the Plaintiff with the statutorily created hearing." (Doc. 1, pp. 16-17). Newton "initially declared that she was arranging a hearing" but "several months later after receiving no response, the Plaintiff again attempted to petition for a document review." (Doc. 1, p. 17). "In response to the request, Defendant Newton memorialized all the extensions of the period of registration for alleged violations of the Act" as is evidenced by Plaintiff's Exhibit 7. *Id.* "In her response Defendant Newton acknowledges the fact that the State and the Plaintiff pursuant to a fully negotiated plea in 05-cf-376 agreed that as a consequence of the conviction the period of registration would not be extended." (Doc. 1, p. 18). Defendant Newton also attempted to justify "the unlawful continued subjection of the Plaintiff to the requirement to register by declaring that as a result of the '05' conviction, wherein the State promised and the trial court ordered 'no extension of the duty to register,' the Plaintiff was now subject to register every '90' days and 'records' indicate several failures to comply." *Id.*

Defendants Newton and Schmitz "connived and conspired to conceal their arbitrary and capricious, willful and wanton misconduct, by using their positions of authority to alter legal documents, change conviction information on a public website, and in excess of said authority, applying provisions of the 'Sex Offender Registration Act' intended by the legislature to apply only to persons deemed 'sexually dangerous' or 'sexually violent persons' who, following proceedings that provide due process, have been designated as such. *See* 730 ILCS 150/6 (West 2013)." (Doc. 1, p. 19). When Plaintiff contacted Defendants Newton and Schmitz arguing that the law they were citing did not apply to him and that the extensions were fabricated, they "altered public records to reflect that the Plaintiff is a 'Sexual Predator' and subject to 'lifetime'

registration." (Doc. 1, p. 20). As a direct result of these actions, the Plaintiff was denied a hearing before the administrative judge "because as a 'lifetime' registering sex offender, the Judge refuses to have a hearing." *Id.*

Plaintiff has submitted many requests to Newton and Schmitz for an administrative review hearing, but they continue to deny him to "conceal their unlawful conduct." (Doc. 1, p. 21). Defendant Newton has also "attempted to apply provisions pursuant to Section 5-7 of the 'Sex Offender Registration Act,' *see* 730 ILCS 150/5-7 (West 2013), a provision the Circuit Court had declared does not apply to the Plaintiff." *Id.* However, neither Newton nor her agents notified Plaintiff that that provision applied "as required to provide due process." *Id.* Newton and Schmitz have also "used their positions within the Department of State Police to arbitrarily and capriciously deprive the Plaintiff of his life and liberty by altering public records during trial to declare the Plaintiff is a 'sexual predator' subject to 'lifetime' registration; manufacturing evidence to reflect the Plaintiff has been [twice] convicted of sexual offenses; and knowingly and willfully instructing 'all' law enforcement agencies to record the same manufactured evidence; or taking no action to correct the same." (Doc. 1, p. 22).

On September 5, 2013, "Defendant Newton discovered that 10 years after the Plaintiff was convicted and released no record indicated he was still under a legal and lawful obligation to register and instead of providing the relief contemplated by law, Defendant Newton memorialized several fabricated violations of the duty to register" as evidenced by Plaintiff's Exhibit 7. (Doc. 1, p. 25). Plaintiff was deprived of due process without a method to challenge the legitimacy of his requirement to register. (Doc. 1, p. 26). Newton and Schmitz committed perjury in declaring to the Attorney General that Plaintiff was convicted on January 10, 1996 for the offense of Aggravated Criminal Sexual Assault, 720 ILCS 5/12-14(b)(1), a Class X Felony,

7

though Plaintiff "has never received" such a conviction "in any state." (Doc. 1, p. 27). Newton and Schmitz "continue to designate the Plaintiff as a 'Sexual Predator' and 'Sexually Violent/Dangerous Person' to prevent any Court from discovering their unlawful corrupt actions in violation of Plaintiff's constitutional rights." *Id.*

### B. Conspiracy

Defendants City of Belleville, Beth Ferry, Clayton Greene, Mark Heffemon, and William Clay have the authority to conduct registrations of sex offenders who are required by law to register in Belleville consistent with administrative rules and duties. (Doc. 1, pp. 30-31). Defendants City of O'Fallon, Chief of Police, Officer Brueggman, and Kathleen Effan have similar authority to conduct registrations in O'Fallon. *Id.* Defendant "Bernadette Schremp is employed with the St. Clair County State's Attorney, however, at all times relevant to this action, she abandoned her role as advocate and became an investigator and agent of Defendant Newton and Schmitz." *Id.* "[T]he defendants are required upon initial registration to first, discover whether or not there is a duty of the registrant pursuant to the law that has not expired or been removed." (Doc. 1, p. 31). "The law mandates the defendants to create a file for every registration completed within the jurisdiction of the municipality and to share the information with any subsequent jurisdiction upon request." (Doc. 1, pp. 31-32).

Plaintiff completed his initial registration with Belleville on January 25, 1996. (Doc. 1, p. 32). The initial registration declares that St. Clair County was the county of conviction, in Case No. 95-cf-750, for aggravated criminal sexual abuse, with a conviction date of January 10, 1996, a release date of January 10, 1996, and an expiration date of January 10, 2006. *Id.* "The defendants have a mandatory duty to keep this and every registration until the duty to register expires." (Doc. 1, pp. 32-33). The law also "mandates that the defendants ensure that the

information in every registration is accurate and the defendants must enter the information into LEADS within 72 hours." (Doc. 1, p. 33).

Plaintiff was ultimately "arrested because LEADS was not properly maintained and a rogue officer after reviewing LEADS refused to conduct an inquiry into the court records to discover the terms of the plea agreement. The officer called Defendant Newton who contacted the Defendant City of Belleville. Following these events the defendants conspired to unlawfully, arbitrarily, and capriciously . . . alter records of conviction; manufacture evidence contained in legal documents; and disseminate false information to ensure that the plaintiff continue[d] to be denied the right to due process, denied any pre-or-post deprivation proceedings; and to conceal their unlawful actions." (Doc. 1, pp. 33-34).

The registrations completed by Ferry, Heffemon, Greene, and Clay "contained intentional false, manufactured, and manipulated information. . . . Falsifying Plaintiff's registration became the policy of 'all' defendants." (Doc. 1, p. 34). Clay "knew of and ignored actions by his officers." (Doc. 1, p. 35). "The defendants knowingly and unlawfully destroyed or otherwise withheld several registrations to effect continued and numerous extensions of the Plaintiff's period of registration." *Id.* From 1996 to 2017, the defendants have "continue[d] to deprive the plaintiff of due process by falsifying documents they have a duty to record accurately." *Id.*

Defendants City of O'Fallon, Chief of Police, Officer Brueggman, and Kathleen Effan "recorded manufactured evidence after conspiring with the defendant City of Belleville, Beth Ferry, Mark Heffemon, Clayton Greene, and William Clay, together and in communication with defendant Newton and Schmitz" in an "intentional abuse of their duty." (Doc. 1, p. 36). "The O'Fallon defendants altered information to defraud the Court. Falsifying legal documents became the policy of 'all' defendants." *Id.* The Chief of Police "knew of and ignored the actions

9

of his 35 officers." *Id.*

In "collusion with defendant Newton and Schmitz, the defendant Schremp . . . altered the plaintiff's legal status from a 'Child Sex Offender,' subject to 10 year registration, to a 'Sexual Predator,' subject to lifetime registration" and sought to deprive Plaintiff of his right to due process and injure his reputation in the community. (Doc. 1, p. 37). Schremp's actions "caused the Plaintiff to be deprived of the right to post-deprivation relief." (Doc. 1, p. 38).

### C. Ex Post Facto Violation

The conduct underlying Plaintiff's plea agreement occurred prior to the 1996 amendments to the relevant Illinois sex offender law. (Doc. 1, p. 39). Nevertheless, after his probation was terminated, Newton "began to apply various provisions and penalties that did not exist or pertain to Plaintiff." (Doc. 1, pp. 39-40). To conceal her actions, Newton subjected Plaintiff "to a law that applied to 'Sexually Violent' or 'Sexually Dangerous Persons' that was not in effect at the time the conduct in 05-cf-376 occurred." (Doc. 1, p. 40). "Several years later, Illinois changed a section of the 'Sex Offender Registration Act' that only applied to 'Sexually Violent or Sexually Dangerous Persons,' and as to these persons, the law applied retrospectively to conduct occurring after July 1, 2005." (Doc. 1, p. 41). That law was not in effect when the conduct underlying the conviction in Case No. 05-cf-376 occurred. *Id.* "Plaintiff was disadvantaged by the unlawful ex post facto effect of defendant Newton's action and . . . the Illinois unconstitutional law as applied." *Id.*

### D. Claim for Relief

As a result of the defendant's actions, the Plaintiff was "repeatedly subjected to pain and suffering from loss of employment, loss of freedom of intimate relations with his wife and children, forced to abandon his home because the duty to register was not applied when the

10

property was secured, forced to sleep in the street because his family's home was too close to a school, subjected to continued deprivation of freedom of movement by being subjected to unlawful restraint by threats of arrest every 90 days, subjected to deprivation of liberty and then deprived of 'all' due process of law, and the Plaintiff has suffered and continues to suffer false imprisonment to conceal corruption and unlawful conduct. The Plaintiff continues to suffer severe emotional distress." (Doc. 1, p. 42). "The Plaintiff remains an innocent man sitting in prison for nine (9) years because of Tracie Newton, and the State of Illinois refuses to correct errors of manifest proportion to conceal corruption of government employees." (Doc. 1, p. 45).

Plaintiff therefore seeks declaratory, monetary, and injunctive relief. (Doc. 1, pp. 43-44).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 3 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Defendants violated Plaintiff's procedural and substantive due process rights by manipulating his sex offender registration records and refusing to provide Plaintiff with a hearing on his duty to register.
>
> **Count 2 –** Defendants conspired against Plaintiff to manufacture his sex offender registration information and repeatedly extend his term of registration.
>
> **Count 3 –** Newton violated the Ex Post Facto Clause when she applied laws that passed after the conduct underlying Plaintiff's offenses to alter his registration requirements.

As discussed in more detail below, none of these counts will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Heck v. Humphrey

This case must be dismissed because Plaintiff's claims presently violate the principles the Supreme Court outlined in *Heck v. Humphrey*, 512 U.S. 477 (1994). According to *Heck*,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (emphasis in original). "We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action. Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* at 489.

Plaintiff presently has a habeas corpus action under 28 U.S.C. § 2254 pending in this District. *See Kitterman v. Dennison*, 16-cv-1134-DRH (S.D. Ill. Aug. 1, 2017). In his habeas action, he challenges the validity of his present convictions for failure to register as a sex offender, *see* St. Clair County, Illinois Case Nos. 12-cf-1204, 15-cf-373, 14-cf-1422, claiming that he should not have had a duty to register because the terms of the plea deal he discusses at length in this case absolved him of this duty long ago. *Id.* Plaintiff's habeas petition on this subject is still pending. Further, he does not allege that his convictions have otherwise been set aside. Thus, *Heck* stands in the way of any § 1983 action concerning Plaintiff's duty to register

12

as a sex offender because, as noted above, "[i]t is well established that a § 1983 plaintiff may not raise claims that, if correct, would necessarily imply the invalidity of a state conviction or sentence unless and until that conviction or sentence has been set aside." *Williams v. Maroney*, 153 F. App'x 709, 711 (7th Cir. 2004) (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) and *Case v. Milewski*, 327 F.3d 564, 568-69 (7th Cir. 2003)).

A ruling that the defendants violated Plaintiff's constitutional rights based on his allegations that they falsified his sex offender registration records, required him to register as a sex offender when he had no obligation to do so, refused to give him a hearing to resolve the issue, and applied inapplicable laws to his situation in violation of the Ex Post Facto Clause of the Constitution and his original plea agreement, allegedly resulting in his false imprisonment, would necessarily imply the invalidity of his present convictions for failure to register as a sex offender. In the Complaint, Plaintiff insists that he is an "innocent man" who should not have been required to register as a sex offender after his initial term of probation ended in 1997. (Doc. 1, pp. 8, 45). If true, Plaintiff's subsequent convictions for failure to register as a sex offender would necessarily appear invalid. Plaintiff, as "the master of his ground," has made "allegations that are inconsistent with [his] convictions having been valid." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003). Because of this, "*Heck* kicks in and bars his civil suit." *Id.* (citing *Edwards v. Balisok*, 520 U.S. 641, 646–48, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); *Ryan v. DuPage County Jury Commission*, 105 F.3d 329, 330–31 (7th Cir. 1996) (per curiam)).

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1**, **2**, and **3**, along with this entire action, are **DISMISSED** without prejudice as *Heck*-barred.

Plaintiff is ADVISED that this dismissal shall count as one of his allotted "strikes" under

the provisions of 28 U.S.C. § 1915(g).  A dismissal without prejudice may count as a strike, so long as the dismissal is made because the action is frivolous, malicious, or fails to state a claim. *See Paul v. Marberry*, 658 F.3d 702, 704 (7th Cir. 2011); *Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 811 (7th Cir. 1998).  A complaint that is barred by *Heck* is considered legally frivolous and counts as a strike under 28 U.S.C. § 1915(g). *Moore v. Pemberton*, 110 F.3d 22, 24 (7th Cir. 1997).

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this Order, he may file a notice of appeal with this Court within thirty (30) days of the entry of judgment.  FED. R. CIV. P. 4(A)(4).  If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467.  Finally, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike."  A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4).  A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  October 25, 2017**

s/ MICHAEL J. REAGAN
**U.S. Chief District Judge**